**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| ARICA CROUSE, on behalf of herself and those similarly situated, | Case No. 3:25-cv-00211 |
| Plaintiff, | |
| v. | **CLASS AND COLLECTIVE ACTION COMPLAINT FOR UNPAID WAGES** |
| WILD WING CAFÉ, INC., and AXUM CAPITAL PARTNERS, LLC. | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

1.      Plaintiff Arica Crouse ("Plaintiff"), on behalf of herself and all similarly situated individuals, brings this action against Wild Wing Café, Inc. and Axum Capital Partners, LLC (collectively "Defendants") to recover unpaid wages under the Fair Labor Standards Act (FLSA) and the North Carolina Wage and Hour Act (N.C. Gen. Stat. § 95-25.1, *et seq.* (NCWHA)) stemming from Defendants' tip theft and failure to pay wages due.

2.      Defendants own and operate an establishment known as Wild Wing Café headquartered in Charlotte, North Carolina.

3.      Founded in 1990, Wild Wing Café has grown from a single location to a restaurant and bar franchise with twenty-four locations across six states, including three locations in North Carolina.

4.      Defendants adopted employment and compensation policies that applies to all employees.

5.      Pursuant to Defendants' compensation and employment policies, rather than pay Plaintiff and similarly situated servers and bartenders an hourly wage that met or exceed the applicable hourly minimum wage, Defendants took a "tip credit" and paid Plaintiff and similarly

situated servers and bartenders' wages less than the applicable minimum wage required.

6.     Defendants did not notify Plaintiff of the tip credit policy.

7.     Defendants required servers to share tips with non-topped employees, including managers, who were not included in the tip pool.

8.     Defendants also used the tip pool to cover restaurant expenses including imbalances in the register at the end of a shift.

9.     Defendants' employment policy results in the unlawful retention of tips and failure to pay wages due under the FLSA and NCWHA.

10.     Plaintiff brings this action on behalf of herself and similarly situated current and former servers and bartenders who elect to op in pursuant to FLSA, 29 U.S.C. § 216(b), to remedy violations of the FLSA wage and hour provisions, 29 U.S.C. § 203(m)(2)(b), 29 U.S.C. § 207, *et seq.*, by Defendants.

11.     Plaintiff also brings this action on behalf of herself and similarly situated current and former servers and bartenders in North Carolina, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of the NCWHA, N.C. Gen. Stat. §§ 95-25.6, 95-25.8 and 95-25.22 against Defendants.

12.     This action seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff with minimum wage as required by the FLSA, North Carolina Wage Payment Law (N.C. Gen. Stat. § 95-25.6), North Carolina Unpaid Wages Law (N.C. Gen. Stat. § 95-25.22) (collectively "North Carolina Wage and Hour Laws"), and damages under the theory of unjust enrichment.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over Plaintiff's FLSA claims under 28 U.S.C. § 1331

and 29 U.S.C. § 216(b).

14.    This Court has supplemental jurisdiction over Plaintiff's North Carolina claims pursuant to 28 U.S.C. § 1367, as those claims are sufficiently related to the claims over which this Court has original jurisdiction and arise from the same case or controversy presented in this Complaint.

15.    Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendant is located in this judicial district and a substantial part of the events giving rise to the claim herein occurred in this district.

16.    The relevant time period is defined as the maximum statute of limitations allowable under the FLSA, North Carolina Wage and Hour Law, and the theory of unjust enrichment.

## PARTIES

**Plaintiff Arica Crouse**

17.    Plaintiff Arica Crouse is an individual residing in Old Fort, North Carolina.

18.    At all times relevant herein, Plaintiff was an "employee" of Defendant as defined in the FLSA and N.C. Gen. Stat. § 95-25.2.

19.    Plaintiff was employed by Wild Wing Café from November 2023 until January 2025.

**Defendant Wild Wing Café, Inc.**

20.    Wild Wing Café Inc. is a food establishment that also serves alcohol with three locations in North Carolina, and 24 total locations spanning the Southeastern United States.

21.    Wild Wing Café Inc. is headquartered in Charlotte, North Carolina.

22.    Wild Wing Café had control over Plaintiff and similarly situated employees' working conditions.

23.    At all relevant times, Wild Wing Café has shared or co-determined those matters

governing the essential terms and conditions of employment for Plaintiff and similarly situated employees at Wild Wing Café's Arden location.

24.     At all relevant times, Wild Wing Café had and continues to have direct or indirect control over the terms and conditions of Plaintiff and similarly situated employees' work.

25.     At all relevant times, Wild Wing Café possessed the authority to control the terms and conditions of Plaintiff's employment and the employment of similarly situated employees and has exercised that authority.

26.     Wild Wing Café permits Plaintiff and similarly situated employees to work.

27.     Wild Wing Café, Inc. is a domestic corporation with its principal place of business in North Carolina.

28.     Wild Wing Café is owned, and/or operated by codefendant Axum Capital Partners.

29.     Wild Wing Café has the authority to and does hire and fire employees, supervise and control work schedules and conditions of employees, determine the rate and method of pay, and/or maintain employee records.

30.     Wild Wing Café has substantial control over Plaintiff and similarly situated employees' working conditions and over unlawful policies and practices as alleged herein.

31.     Wild Wing Café maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

32.     Wild Wing Café applies or causes to be applied substantially the same employment policies, practices, and procedures to all employees at all its locations, including policies, practices, and procedures related to payment of tips earned and wages.

4

33.     Wild Wing Café is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

34.     Wild Wing Café has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

35.     Upon information and belief, Wild Wing Café's gross revenue exceeds $500,000 per year.

**Defendant Axum Capital Partners, LLC**

36.     Axum Capital Partners, LLC is a private equity firm based in Charlotte, North Carolina

37.     Axum Capital Partners is or was the parent corporation of Wild Wing Café during the relevant time period.

38.     Axum Capital Partners is involved in the operations of Wild Wing Cafe.

39.     Axum Capital Partners owns and operates the food and drink establishment "Wild Wing Café, Inc."

40.     Axum Capital Partners supervised and directed the employment of Plaintiff and similarly situated employees.

41.     Axum Capital Partners is a corporation liable under the definition of "employer" set forth in the FLSA and N.C. Gen. Stat. § 95-25.2 because they own and operate Wild Wing Café or ultimately controls significant aspects of the entity's day-to-day functions and controls the compensation of employees. 29 U.S.C. § 203(d).

42.     At all relevant times, by virtue of their role as owner of Wild Wing Café, Axum Capital Partners has had financial control over the operations at Wild Wing Café.

43.     At all relevant times, by virtue of their role as owner of Wild Wing Café, Axum

Capital Partners has had a role in significant aspects of Wild Wing's day-to-day operations.

44. At all relevant times, by virtue of their role as owner of Wild Wing Café, Axum Capital Partners had control over Wild Wing's pay policies.

45. At all relevant times, by virtue of their role as owner of Wild Wing Café, Axum Capital Partners had power over personnel and payroll decisions at Wild Wing Café, including, but not limited to, influence over Plaintiff and similarly situated employees' rate of pay.

46. At all relevant times, by virtue of their role as owner of Wild Wing Café, Axum Capital Partners had the power to hire, fire, and discipline employees, including Plaintiff and similarly situated employees.

47. At all relevant times, by virtue of their role as owner of Wild Wing Café, Axum Capital Partners had the power to transfer the assets and liabilities of Wild Wing Café.

48. At all relevant times, by virtue of their role as owner of Wild Wing Café, Axum Capital Partners had the power to declare bankruptcy on behalf of Wild Wing Café.

49. At all relevant times, by virtue of their role as owner of Wild Wing Café, Axum Capital Partners had the power to enter into contracts on behalf of Wild Wing Café.

50. At all relevant times, by virtue of their role as owner of Wild Wing Café, Axum Capital Partners had the power to close, shut down, and/or sell Wild Wing Café products.

51. At all relevant times, by virtue of their role as owner of Wild Wing Café, Axum Capital Partners had authority over the overall direction of Wild Wing Café and has been ultimately responsible for their operations.

52. Axum Capital Partners has influence over how Wild Wing Café can run more profitably.

## FACTS

## CLASS-WIDE FACTUAL ALLEGATIONS

53.     During all relevant times, Defendants operated Wild Wing Café in Arden, North Carolina, with other locations in Raleigh, North Carolina, Asheville North Carolina, and throughout the Southeast United States including Alabama, Florida, Tennessee, Georgia, South Carolina, Texas, and Virginia.[1]

54.     Plaintiff and the similarly situated employees they seek to represent work or worked for Defendants in tipped positions.

55.     During some or all of the relevant time period, Defendants violated 29 U.S.C. § 203(m)(2)(b) and 29 C.F.R. § 531.59 by unlawfully withholding tips earned by employees working in tipped positions.

56.     During some or all of the relevant time period, Defendants violated 29 U.S.C. § 203(m)(2)(a) by failing to comply with the requirements for taking a tip credit.

57.     During some or all of the relevant time period, Defendants forced Plaintiff and similarly situated employees to share tips with other employees, such as managers, who are not eligible to share in a tip pool.

58.     During some or all of the relevant time period, Defendants took tips from the tip pool to cover restaurant expenses.

59.     During some or all of the relevant time period, Plaintiff and similarly situated employees were paid minimum wage minus a tip credit for hours worked.

60.     During some or all of the relevant time period, Defendants failed to give Plaintiff

_____

[1] The Texas and Florida Wild Wing Café locations closed in or around 2023.

and similarly situated employees notice of the tip credit policy.

**Plaintiff Arica Crouse's Experiences.**

61.     Plaintiff worked for Defendants as a server in a tipped capacity during the relevant time period and was paid approximately $2.13 per hour.

62.     As a server, Plaintiff's primary job duties included waiting on guests, serving food and drinks to guests, and ensuring a safe and health environment for guests.

63.     During the course of her work duties, Plaintiff earned tips for serving food and drinks to Defendants' customers.

64.     During some or all of the relevant time period, Plaintiff was paid minimum wage minus a tip credit for the hours she worked.

65.     Defendants did not notify Plaintiff of the requirements for taking a tip credit under the FLSA and the NCWHA.

66.     Defendants routinely retained tips earned by Plaintiff and/or diverted tips earned by Plaintiff to employees working in non-tipped capacities, including management.

67.     Defendant required Plaintiff to pool her tips in a "tip pool" and would use part of the tip pool to pay for restaurant expenses, including drawer shortages.

68.     By withholding and/or diverting tips and failing to provide notice of the tip credit under the FLSA and the NCWHA, Defendants forfeited the right to pay Plaintiff a tipped minimum wage and now owes her the difference between the tipped wage rate paid and full minimum for every hour worked.

69.     Plaintiff was not classified as exempt under either the FLSA or the North Carolina Wage and Hour Laws.

## COLLECTIVE ACTION ALLEGATIONS

70.     Plaintiff brings the First and Second Counts under 29 U.S.C. 216(b) on behalf of herself and a collective class consisting of:

> All current and former tipped workers employed by Defendants from March 24, 2022, and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

71.     At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully failing to properly take a tip credit from the wages of Plaintiff and the FLSA Collective, refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked, and retaining employee tips.

72.     Defendants' unlawful conduct is pursuant to a corporate policy or practice of minimizing labor costs by failing to properly pay Plaintiff and the FLSA Collective.

73.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

74.     Defendants are aware or should have been aware that federal law prohibited them from retaining employee tips.

75.     Defendants are aware or should have been aware that, in order to take a tip credit from the wage of Plaintiff and the FLSA Collective, the federal law required them to inform Plaintiff and the FLSA Collective of the tip credit provisions of the FLSA and prohibited them from requiring Plaintiff and the FLSA Collective to share tips with employees who are not engaged in customer service, including the restaurant itself.

76. Defendants' unlawful conduct has been widespread, repeated, and consistent.

77. The First and Second Counts are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

78. The FLSA Collective members are readily identifiable and ascertainable.

79. For the purpose of notice and other purposes related to this action, the FLSA Collective members' names, addresses, email addresses, and phone numbers are readily available from Defendants' records.

80. In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## CLASS ACTION ALLEGATIONS

81. Plaintiff brings the Third and Fourth Counts under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former tipped employees employed by Defendants between March 24, 2022, and the date of final judgment in this matter ("Rule 23 Class").

82. Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

83. The number and identity of the Rule 23 Class Members are ascertainable from Defendants' records. The hours assigned and worked, the positions held, and the rates of pay for each Rule 23 Class Member are also determinable from Defendants' records. For the purpose of

notice and other purposes related to this action, their names, addresses, email addresses, and phone numbers are readily available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

84.     The Rule 23 Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

85.     Upon information and belief, there are more than 50 Rule 23 Class Members.

86.     Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class Member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class Member in separate actions.

87.     Plaintiff and the Rule 23 Class Members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and failing to properly take a tip credit from their wages.

88.     Plaintiff and the Rule 23 Class Members have all sustained similar types of damages as a result of Defendants' failure to comply with N.C. Gen. Stat. § 95-25.2 *et seq.*, and the doctrine of unjust enrichment.

89.     Plaintiff and the Rule 23 Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

90.     Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

91.     Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class

and has no interests antagonistic to the Rule 23 Class.

92.　　Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

93.　　A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class members to redress the wrongs done to them. Further, important public interests will be served by address the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources, but treating the claims as a class action would result in significant savings of these costs. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Class Members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Class Members' rights and the disposition of their interests through actions to which they were not parties.

94.　　This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

95.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

a.  Whether Defendants required Plaintiff and the Rule 23 Class to share tips with employees or others who were not permitted to share in a tip pool;

b.  Whether Defendant improperly retained tips given to or intended for Plaintiff and the Rule 23 Class;

c.  Whether Defendants' policy of failing to pay tips to Plaintiff and the Rule 23 Class was instituted willfully or with reckless disregard of the law;

d.  The nature and extent of class-wide injury and the measure of damages for those injuries; and

e.  Whether Plaintiff and the Rule 23 Class have conferred a benefit on Defendants, whether Defendants had knowledge of that benefit, and whether it would be unjust for Defendants to retain the benefit without restitution.

96.     In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective and Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## CAUSES OF ACTION

### COUNT I
### FAILURE TO PAY MINIMUM WAGE – TIP THEFT
### (FAIR LABOR STANDARDS ACT 29 U.S.C. § 203(m)(2)(B), *et seq.*)
### (On Behalf of Plaintiff and the FLSA Collective)

97.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

98.     Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

99.     Defendants violated the FLSA by improperly retaining tips received by Plaintiff and the FLSA Collective.

100.    Defendants impermissibly required Plaintiff and the FLSA Collective to share tips with the business itself.

101.    Defendants impermissibly required Plaintiff and the FLSA Collective to share tips with non-tipped employees.

102.    Plaintiff and the FLSA Collective were denied proper minimum wage because Defendants paid them less than permissible minimum wage minus a tip credit.

103.    Plaintiff and the FLSA Collective were denied proper minimum wage because they were required to share tips with parties and individuals who were not permitted to be included in a valid tip pool, including Defendants themselves, Defendants' managers, and Defendants' back of house employees.

104.    During the relevant period, Defendants have violated and are violating the provisions of Section 6 of the FLSA, 29 U.S.C. § 206, and 215(a)(2), by employing Plaintiff and the FLSA Collective Members in an enterprise engaged in commerce of in the production of commerce within the meaning of the FLSA, and failing to pay employees at a minim wage rate.

105.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

106.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

107.    As a result of Defendants' violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

**COUNT II**
**FAILURE TO PAY MINIMUM WAGE – TIP CREDIT NOTICE**
**(FAIR LABOR STANDARDS ACT 29 U.S.C. § 203(m),** *et seq.***)**
**(On Behalf of Plaintiff and the FLSA Collective)**

108.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

109.     Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

110.     Defendants did not provide tip credit notice as required by 29 U.S.C. § 203(m).

111.     Defendants' tip credit notice did not comply with 29 C.F.R. § 531.59(b).

112.     Defendants' illegal practices in violation of the FLSA result in Defendants' forfeiture of the tip credit, and therefore, Defendants are precluded from relying on tips to supplement the subminimum hourly wage Defendants paid Plaintiff and the FLSA Collective.

113.     By the acts and conduct described above, Defendants willfully violated the FLSA and disregarded the rights of Plaintiff and the FLSA Collective Class.

114.     Plaintiff and the FLSA Collective Class have been damaged by Defendants' willful failure to pay minimum wage as required by law.

115.     As a result of Defendants' violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

**COUNT III**
**FAILURE TO PAY WAGES DUE**
**(N.C. Gen. Stat. § 95-25.6, .8, and .22)**
**(On Behalf of Plaintiff and the Rule 23 Class)**

116.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

117.     During all relevant times, Defendants were entities covered by N.C. Gen. Stat. § 95-25.6, and Plaintiff and the Rule 23 Class were employees within the meaning of N.C. Gen. Stat. § 95-25.2 and were not exempt from its protections.

118.     N.C. Gen. Stat. § 95-25.6 requires that Defendants pay Plaintiff and the Rule 23 Class all wages and tips at least once each month on regular paydays established by Defendant.

119.     N.C. Gen. Stat. § 95-25.2 defines "wages" as "compensation for labor or services rendered by an employee . . . [and] includes sick pay, vacation pay, severance pay, commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments."

120.     Defendants are required to pay each employee at or above the minimum wage rate for all hours worked.

121.     Plaintiff and putative Class Members are or were directed to work by Defendant but are or were not compensated at least the minimum wage rate for all time worked on regular paydays.

122.     Because of Defendants' policies and practices with regard to compensating Plaintiff and putative Class Members, Defendant willfully failed to pay minimum wages due on regular paydays as required by the NCWHA.

123.     During all or part of the relevant time period, Defendant failed to properly distribute tip income to Plaintiff and the Rule 23 Class in violation of N.C. Gen. Stat. § 95-25.8.

124.     As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to unpaid wages, including liquidated damages, interest, and attorneys' fees.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Rule 23 Class)**

125.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

126.    Plaintiff and the Rule 23 Class have conferred a benefit upon Defendants.

127.    For example, Defendants unlawfully retained the tipped employees' tips for their own purposes from all times relevant to the present.

128.    Defendants retained tips intended for Plaintiff and the Rule 23 class and failed to pay Plaintiff and the Rule 23 Class full wages due on the schedule paydays.

129.    Defendants also obtained other benefits as a result of Plaintiff and the Rule 23 Class working under Defendants' compensation policy.

130.    Defendants knew that Plaintiff and the Rule 23 Class conferred that benefit on Defendants.

131.    Defendants did not compensate or under-compensated Plaintiff and the Rule 23 Class for these benefits.

132.    Accordingly, Defendants' retention of these benefits under these circumstances would be unjust.

133.    As a result of Defendants having been unjustly enriched, Plaintiff and the Rule 23 Class are entitled to compensation for the value of the benefit Plaintiff and the Rule 23 Class conferred on Defendants.

**WHEREFORE**, Plaintiff Arica Crouse prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly situated members of an opt-in class,

apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.      Unpaid minimum wages, unlawfully retained tips, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.      Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E.      A declaratory judgment that the practices complained of herein are unlawful under N.C. Gen. Stat. § 95-25.8.

F.      An award of unpaid minimum wages, unlawfully retained tips, and damages due under N.C. Gen. Stat. § 95-25.22.

G.      Liquidated damages under N.C. Gen. Stat. § 95-25.22.

H.      An award of the value of the benefits for which Defendants were unjustly enriched.

I.      An award of prejudgment and post-judgment interest.

J.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

K.      Such other legal and equitable relief as the Court deems appropriate.

<u>**JURY DEMAND**</u>

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

Dated: March 25, 2025

Respectfully submitted,

/s/ *Scott C. Harris*

Scott C. Harris (NC Bar No. 35328)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Tel: (919) 600-5003
sharris@milberg.com

Mariya Weekes*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2nd Floor
Coral Gables, FL 33134
Tel: (786) 879-8200
Fax: (786) 879-7520
mweekes@milberg.com

Philip J. Krzeski*
Elizabeth Orrick*
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
pkrzeski@chestnutcambronne.com
eorrick@chestnutcambronne.com

*Counsel for Plaintiff and the putative class*

*\* Pro hac vice forthcoming*